

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
03/11/2015

| | | |
|---|---|---|
| IN RE: § | | |
| ATP OIL & GAS CORPORATION, § | CASE NO: 12-36187 | |
|  Debtor. § | | |
| § | CHAPTER 7 | |

| | | |
|---|---|---|
| RODNEY TOW, § | | |
|  Plaintiff § | | |
| § | | |
| VS. § | ADVERSARY NO. 14-03286 | |
| § | | |
| HBK MAIN STREET INVESTMENTS, § | | |
| L.P., § | | |
|  Defendant. § | | |

and

| | | |
|---|---|---|
| RODNEY TOW, § | | |
|  Plaintiff § | | |
| § | | |
| VS. § | ADVERSARY NO. 14-03287 | |
| § | | |
| SANKATY ATP, LLC, § | | |
|  Defendant. § | | |

## MEMORANDUM OPINION

These two adversary proceedings present a question of first impression: Does the safe harbor provision contained in § 541(b)(4)(B) protect a disguised debt instrument from the structures of the Bankruptcy Code? A straightforward reading of the complex statute leads to the conclusion that the safe harbor provision provides no protection for a disguised debt instrument if state law would treat the instrument according to its true character.

Accordingly, HBK's and Sankaty's motions to dismiss these complaints are denied.

**Premises of Opinion**

As the Court must when considering a Rule 12(b) motion to dismiss for failure to state a claim, the Court assumes that the reasonable allegations in the complaint are true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). At oral argument, the Court extended this premise to assume that certain of the Defendant's allegations are also true (see the last premise listed below). Accordingly, the opinion assumes—without finding—these factual premises:

- On March 1, 2012, ATP and HBK entered into a "Conveyance of Term Overriding Royalty Interest" that purported to transfer ownership of certain hydrocarbons to HBK.

- On March 1, 2012, ATP and Sankaty entered into a "Conveyance of Term Overriding Royalty Interest" that purported to transfer ownership of certain hydrocarbons to Sankaty.

- Although the conveyances purported to transfer ownership in the hydrocarbons, the conveyances included provisions that subordinated the ownership to the ownership of certain third parties.

- The conveyances included an implicit interest rate such that the hydrocarbon transfer would not terminate until the Defendants recovered a specific rate of return. (*See* ECF No. 1-1 at 20) (defining the "Termination Time" as the point in time when grantee has received a designated rate of return calculated as an internal rate of return).

- The conveyance agreements are governed by the Outer Continental Shelf Lands Act, which provides for the application of Louisiana law to determine the rights of the parties.

- Tow is *not* attempting to utilize 11 U.S.C. § 365 to treat the conveyance agreements as leases or as executory contracts.[1]

---

[1] Although this claim is made in Tow's complaint, it was abandoned at oral argument. To the extent that Tow persists in his attempt to treat the alleged conveyances as executory leases or contracts under § 365 (Count Two of his First Amended Complaint), HBK and Sankaty's motion to dismiss is granted.

- If the conveyances were transfers, the conveyances would satisfy the requirements of § 541(b)(4)(B)(i) of the Bankruptcy Code: Under that assumption, the conveyances would concern "interest[s] of the debtor in liquid or gaseous hydrocarbons … transferred pursuant to a written conveyance of a production payment to an entity that does not participate in the operation of the property from which such production payment is transferred."

### The Statutory Question

Although HBK and Sankaty acknowledge that the statute is unambiguous, they ask the Court to interpret the statute in light of its legislative history. The Court declines the invitation. When the Bankruptcy Code is unambiguous and the results are not absurd, the Court should apply the words of the statute as written. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

The Supreme Court has explained *Ron Pair:*

> As in all statutory construction cases, we begin with the language of the statute. The first step "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (citing *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). The inquiry ceases "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.' " 519 U.S., at 340, 117 S.Ct. 843.

*Barnhart v. Sigmon Coal Co., Inc.,* 534 U.S. 438, 450 (2002).

Although Sankaty and HBK ask this Court to apply legislative history and to extend the safe harbor pursuant to a theory of Congressional intent, the Court may not do so when the statute is unambiguous:

> Our role is to interpret the language of the statute enacted by Congress. This statute does not contain conflicting provisions or ambiguous language. Nor does it require a narrowing construction or application of any other canon or interpretative tool. "We have

> stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.' " *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (quoting *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)) (citations omitted). We will not alter the text in order to satisfy the policy preferences of the Commissioner. These are battles that should be fought among the political branches and the industry. Those parties should not seek to amend the statute by appeal to the Judicial Branch.

*Barnhart v. Sigmon Coal Co., Inc.,* 534 U.S. 438, 461 (2002).

Section 541(a) establishes the breadth of property of the Estate. Absent a particular provision in the Bankruptcy Code to the contrary, property rights are determined in accordance with non-bankruptcy law. *Butner v. United States*, 440 U.S. 48 (1979). Section 541(b)(4)(B) provides for an exception to § 541(a) and defines certain property that, even if included under § 541(a), is not property of a bankruptcy estate.

Specifically, § 541(b)(4)(B) provides the following exclusion:

> **541(b). *Property of the estate does not include–***
>
> *…*
>
>> *(4) any interest of the debtor in liquid of gaseous hydrocarbons to the extent that–*
>> *…*
>>> *(B) (i) the debtor has transferred such interest pursuant to a written conveyance of a production payment to an entity that does not participate in the operation of the property from which such production payment is transferred; and*
>>>
>>> *(ii) but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 365 or 542 of this title;*

As set forth above, this Memorandum Opinion is premised on the assumption (argued by the Defendants) that the purported conveyances to them satisfy the requirements set forth in

541(b)(4)(B)(i). Moreover, claims arising under § 365 are dismissed pursuant to the safe harbor. The issue is whether the remainder of the claims must also be dismissed.

The requirements in subsections (i) and (ii) are joined by the conjunctive "and". Proper statutory application requires that—to be excluded from property of the Estate—the recovery sought by Tow must run afoul of both subsection (i) and subsection (ii). *City of Rome v. United States,* 446 U.S. 156 (1980) (holding that the use of the word "and" in a civil rights statute required that both items listed in a statue must be satisfied).

Accordingly, because the Court assumes that subsection "i" is satisfied and because any recovery under § 365 is dismissed, the Court must determine whether:

> ***"[T]he estate could include the [hydrocarbons] … only by virtue of section 542 of this title".***

If the trustee must utilize § 542 to win his lawsuits, these adversary proceedings must now be dismissed. If the trustee need not utilize § 542 to win his lawsuits, theses adversary proceedings will survive for further proceedings.

### Section 542

Section 542 requires an entity that is in possession of estate property to deliver the property to the trustee, and to account for the property or its value. 11 U.S.C. § 542(a).

The function of § 542 is to return possessory rights in property to the trustee. 5 Collier on Bankruptcy ¶ 542.01, p. 542-3 (16th ed. 2013). Section 542 was added to the Bankruptcy Code as part of the Bankruptcy Reform Act of 1978 to "bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced…" *Braunstein v. McCabe,* 571 F.3d 108, 116 (1st Cir. 2009), *citing United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 207-08, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

Section 542 is used to recover possession, not title. *U.S. v. Inslaw, Inc.,* 932 F2d 1467 (D.C. Cir. 1991). As in this case, title to the property at issue in *Inslaw* was in dispute. Section 542 is inapplicable when there is a title dispute between parties. "It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute." *U.S. v. Inslaw, Inc.,* 932 F2d 1467, 1472 (D.C. Cir. 1991). Tow cannot and does not seek to utilize section 542 to defeat Defendants' argument that the conveyances transferred title to them. For the reasons described in this Memorandum Opinion, Tow's relief is also not implicitly sought under § 542. Consideration of § 542 is not required to grant effective relief to Tow.

In the context of production payments, a § 542 lawsuit would most likely be directed at an intermediary disbursing agent seeking to require the intermediary to turnover proceeds from production to the Estate. That is not occurring in this lawsuit.

HBK and Sankaty argue, without support, that any lawsuit to establish that property is estate property under § 541(a)(1) amounts to a complaint for turnover under § 542. Such an argument defies logic, precedent, and plain meaning.

Tow is not asking for HBK and Sankaty to turn over anything. Rather, he is asking for a declaration that the purported conveyance documents do not convey hydrocarbons under Louisiana law. Tow argues that the purported conveyance documents are merely a disguised set of loan documents. If Tow prevails, HBK and Sankaty need not turn anything over to him.

Instead, Tow is seeking a judgment under § 550 of the Bankruptcy Code for potential preferential payments (under § 547), fraudulent conveyances (under §§ 544 and 548), and unauthorized post-petition payments (under § 549). However, that judgment would not require a § 542 turnover. Indeed, HBK and Sankaty explicitly argue that recoveries made under these

sections would *not* arise under § 542. *See* "Defendant's Supplemental Brief in Support of HBK's Motion to Dismiss", ECF No. 19, p. 7.

The turnover issue is driven home by the breadth of § 541(b)(4)(B)(i). HBK and Sankaty correctly argued at oral arguments held on March 6, 2015 that the Bankruptcy Code defines "production payment" so broadly that it would include an interest in hydrocarbons that served as security for a non-recourse secured loan. However, in a typical lending arrangement, the debtor/obligor traditionally remains in possession of its collateral. Whether these purported conveyances were an effective transfer of ownership or a disguised loan, it is undisputed that ATP remained in possession of the hydrocarbons at the petition date.

If the lender has seized (but not taken ownership of) the collateral prior to the petition date, the collateral is subject to turnover. *Whiting Pools, Inc.,* 462 U.S. 198 (1983). But, HBK and Sankaty argue that—in the absence of a pre-petition seizure—a debtor's § 541 rights in the collateral are determined only by a turnover action under § 542.

The argument is nonsensical. There was nothing to turn over at the petition date. The Debtor already possessed the property on the petition date. Why would it seek to have it turned over? On the petition date, ATP was in possession of the hydrocarbons in the ground. ATP's possession may have been subject to HBK and Sankaty's ownership or debt rights, but ATP was in possession. Confronted with this reality at oral argument, HBK and Sankaty focused on legal title rather than possession of the hydrocarbons:

> [T]he Defendants in this case are in possession of legal title to their production payments. That's the current state. That has to be given back or given up if the safe harbor doesn't apply or if they win their lawsuit. But, that's where 542(a) kicks in. It has to be returned to them … legal title has to be returned to the trustee so that he can use it, sell it again, or lease it. But that can be used, sold or leased that legal title and the production payments that flow from them.

(Statement by Counsel at oral argument on March 6, 2015 at 11:26 a.m.).

The argument is fatally flawed. If HBK and Sankaty had legal title at the petition date under Louisiana law, then HBK and Sankaty win the lawsuit. They needn't turn over anything. If they did not have legal title on the petition date, that will be established by a declaration that states the effect of the documents. Again, there is nothing to turn over.

The proper characterization of the agreement under Louisiana law (no matter which party prevails) would not require HBK or Sankaty to turn over anything.

Tow's requested declaration neither seeks nor implies relief under § 542.

Accordingly, because no § 542 relief is requested or appropriate, the trustee has stated a claim that is not precluded by the safe harbor provision of § 541(b)(4)(B).

## Conclusion

The Court will issue a separate order that dismisses all claims under § 365. All other claims remain for further proceedings.

SIGNED **March 10, 2015.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE